**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CARLA'S PASTA, INC. and | Case No. 21-20111-JJT |
| SURI REALTY, LLC, | Case No. 20-21270-JJT |
| Debtors.[1] | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING MAINTENANCE OF DEBTORS' EXISTING BANK ACCOUNTS; (II) AUTHORIZING USE OF EXISTING BUSINESS FORMS; (III) AUTHORIZING USE OF CASH MANAGEMENT SYSTEM; AND (IV) FINDING THE REQUIREMENTS OF 11 U.S.C. § 345(B) TO BE SATISFIED WITH RESPECT TO THE DEBTORS' DEPOSIT PRACTICES**
(*Emergency Determination Requested*)

Carla's Pasta, Inc. and Suri Realty, LLC, as debtors and debtors-in-possession in the above-captioned chapter 11 cases (together, the "Debtors"), file this motion (this "Motion") respectfully requesting an order authorizing, but not directing, (a) the maintenance of their existing bank accounts, and authorizing a waiver of certain operating guidelines relating to these bank accounts set forth in the U.S. Department of Justice, Office of the United States Trustee: Guidelines for Debtors-in-Possession (the "U.S. Trustee Guidelines"); (b) the continued use of existing business forms; (c) the continued use of the Debtors' existing cash management system; and (d) authorizing Debtors' deposit practices and waiving the requirements of section 345(b) of the Bankruptcy Code in connection therewith. The Debtors further seek waiver of the requirements of Bankruptcy Rules 6003 and 6004. In support of this Motion, the Debtors rely upon the *Declaration of Sandeep Gupta, Chief Restructuring Officer, in Support of Debtors' First Day Pleadings* (the "First Day

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Carla's Pasta, Inc. (5847) and Suri Realty, LLC (5847). The Debtors' corporate headquarters and service address is 50 Talbot Lane, South Windsor, Connecticut 06074.

Declaration")[2] filed with the Court contemporaneously herewith. In further support of the Motion, the Debtors state as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This proceeding is core pursuant to 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Rule 1015 of the Federal Rules of Bankruptcy Procedure, and Local Bankr. R. 1015-1.

## BACKGROUND

**A.    General Background**

4. On October 29, 2020, an involuntary petition for relief under chapter 7 of the Bankruptcy Code was filed against debtor Suri Realty, LLC ("Suri"). *See* Case No. 20-21270 at Dkt. No. 1. An order converting the involuntary chapter 7 bankruptcy case to a voluntary case under chapter 11 of the Bankruptcy Code was entered on December 17, 2020. *See* Case No. 20-21270, Dkt. No. 30 (the "Suri Chapter 11 Case").

5. On the date hereof (the "Petition Date"), Carla's Pasta, Inc. ("Carla's Pasta") commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (together with the Suri Chapter 11 Case, the "Chapter 11 Cases").

6. The Debtors continue to operate and manage their businesses as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

7. No trustee, examiner, or statutory committee has been appointed in these Chapter 11 Cases.

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

**B.    The Debtors' Bank Accounts and Cash Management System**

8.    As described in the First Day Declaration, the Debtors have operated in accordance with a streamlined cash management system (the "Cash Management System") in the ordinary course of their business. Carla's Pasta's Cash Management System involves one payroll account and one operating account. Suri maintains one checking account that, as of the date of the Suri Chapter 11 Case, contained approximately $26,300 balance. Each of the bank accounts involved in this Cash Management System (collectively, the "Bank Accounts") and maintained with People's United Bank ("PUB"), are as follows:

|   | Owner | Bank | Account Number | Account Type |
|---|---|---|---|---|
| 1. | Carla's Pasta, Inc. | People's United Bank 850 Main Street Bridgeport, CT 06604 | ******5230 | Operating Account |
| 2. | Carla's Pasta, Inc. | People's United Bank 850 Main Street Bridgeport, CT 06604 | ******5075 | Payroll Account |
| 3. | Suri Realty, LLC | People's United Bank 850 Main Street Bridgeport, CT 06604 | ******9789 | Operating Account |

9.    Carla's Pasta's payroll account is a zero balance account. PUB automatically transfers required funds from the operating account to the payroll account as needed to maintain the zero balance. PUB will automatically sweep excess funds at the end of each day and return the funds to the operating account in the following morning.

10.    The Debtors use the Cash Management System in the ordinary course of their businesses to collect, transfer, and disburse funds generated from operations and to facilitate cash monitoring, forecasting, and reporting. The Debtors' Chief Restructuring Officer, with the assistance of the Debtors' Chief Financial Officer, oversees the Cash Management System and

implements cash management controls for entering, processing, and releasing funds. Additionally, the Debtors supervise the reconciliations of the Debtors' books and records to ensure that all transfers are accounted for properly.

11.     The Debtors currently have correspondence forms, business forms (including, without limitation, letterhead, purchase orders, and invoices), and checks existing immediately prior to the Petition Date, that do not refer to the Debtors' status as Debtors in possession.

### RELIEF REQUESTED

12.     The Debtors seek entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to Bankruptcy Code sections 105(a), 363, and 364(a), authorizing, but not directing, (a) the maintenance of their existing bank accounts, and authorizing a waiver of certain operating guidelines relating to these bank accounts set forth in the U.S. Trustee Guidelines as adopted by the Office of the United States Trustee for the District of Connecticut (the "U.S. Trustee"); (b) the continued use of existing business forms; (c) the continued use of the Debtors' existing cash management system, as modified as discussed below; and (d) authorizing Debtors' deposit practices and waiving the requirements of section 345(b) of the Bankruptcy Code in connection therewith. The Debtors further seek waivers of the requirements of Bankruptcy Rules 6003 and 6004.

### BASIS FOR RELIEF REQUESTED

**A.     The Debtors Should Be Granted Authority To Maintain their Existing Bank Accounts**

13.     The U.S. Trustee has established the U.S. Trustee Guidelines for debtors in possession in order to supervise the administration of chapter 11 cases. The U.S. Trustee Guidelines require chapter 11 debtors to, among other obligations: (a) close all existing bank accounts and open new debtor in possession bank accounts for which the signature cards shall indicate that the debtor is a "Chapter 11 Debtor-in-Possession"; (b) establish a new payroll

account; and (c) maintain any funds in excess of the amount required for current operations in an interest-bearing account.  These requirements are designed to draw a clear line of demarcation between prepetition and postpetition transactions and operations and prevent the inadvertent postpetition payment of prepetition claims.

14.  Pursuant to Bankruptcy Code sections 105(a) and 363, the Debtors seek a waiver of these requirements and authorization to continue using the Debtors' Bank Accounts.  The Debtors believe that PUB is a financially-stable banking institution.  In addition, PUB is a FDIC insured institution.  Furthermore, if the U.S. Trustee Guidelines on this topic are enforced in these Chapter 11 Cases, such a requirement would cause enormous disruption in the Debtors' businesses and would impair the Debtors' efforts to reorganize and maximize the value of their estate. Indeed, as explained above, the Bank Accounts are one component of an established Cash Management System that the Debtors need to maintain to ensure smooth cash management as the Debtors transition into bankruptcy proceedings.  Accordingly, the Debtors must be permitted to continue to maintain the Bank Accounts and, if necessary, open new accounts, wherever needed, whether or not such banks are designated depositories in the District of Connecticut.

15.  Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1); *see Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996) (included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system).  Bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as relatively "simple matter[s]." *See, e.g.*, *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio

1987). In addition, in granting such relief, courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3d Cir. 1993). The requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (cash management system allows debtor "to administer more efficiently and effectively its financial operations and assets").

16. In sum, the Debtors request that the Bank Accounts be deemed to be debtor in possession accounts, and that their maintenance and continued use, in the same manner and with the same account numbers, styles, and document forms as those employed prepetition, be authorized. The Debtors further represent that if the relief requested in this Motion is granted, it will not pay, and PUB will be directed not to pay, any debts incurred before the Petition Date, other than as authorized by this Court.

**B.      The Debtors Should Be Granted Authority to Continue to Use Existing Business Forms and Checks**

17. To minimize expenses to their estates, the Debtors also seek authorization to continue using all correspondence, business forms (including, without limitation, letterhead, purchase orders, and invoices), and checks existing immediately prior to the Petition Date, without reference to the Debtors' status as debtor in possession.

18. Most parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as Debtors in possession as a result of the notoriety of this case in the marketplace,

and additional other press coverage. Moreover, the Debtors' vendors and other creditors will receive direct notice of the commencement of this case.

19. Changing correspondence and business forms would be expensive, unnecessary, and burdensome to the Debtors' estates and disruptive to the Debtors' business operations and would not confer any benefit upon those dealing with the Debtors. For these reasons, and as set forth in the First Day Declaration, the Debtors believe that they should be authorized to use existing checks and business forms without being required to place the label "Debtors In Possession" on each.

## C. The Debtors Should Be Authorized to Continue to Use the Existing Cash Management System

20. The Cash Management System described above and utilized by the Debtors constitutes an ordinary, usual, and essential business practice that is similar to those used by other major corporate enterprises. The Cash Management System facilitates cash forecasting and reporting, monitors collection and disbursement of funds, reduces administrative expenses by facilitating the movement of funds and the development of more timely and accurate balance and presentment information, and administers the various bank accounts required to effect the collection, disbursement, and movement of cash.

21. Maintaining the existing Cash Management System will benefit the Debtors in significant ways, including the ability to: (i) control corporate funds centrally; (ii) ensure availability of funds when necessary; and (iii) reduce administrative expenses by facilitating the movement of funds and the development of more timely and accurate balance and presentment information. For these reasons, it is in the best interests of the Debtors estates to continue using their current Cash Management System.

**D.      Cause Exists to Waive Bankruptcy Code Section 345 to the Extent It Is Applicable to the Cash Management System**

22.     To the extent the Cash Management System does not strictly comply with section 345 of the Bankruptcy Code, the Debtors further seek a waiver of the deposit and investment requirements set forth therein. Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).  Section 345(b) of the Bankruptcy Code requires that a debtor's bank post a bond unless a debtor's funds are "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States." 11 U.S.C. § 345(b). As discussed above, both of the Bank Accounts are maintained at a bank that is insured by the FDIC and therefore are in compliance with section 345(b) of the Bankruptcy Code.

### WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

23.     Pursuant to Bankruptcy Rule 6003(b) and 6004, the Debtors seek (a) immediate entry of an order granting the relief sought herein, and (b) a waiver of any stay of the effectiveness of such an order.  Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition."

24.     To successfully implement the relief requested in the Motion, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a).  Further, Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash

collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

25. As set forth above and in the First Day Declaration, the relief sought herein is necessary to prevent the immediate and irrevocable damage to the Debtors' operations and reorganization stemming from a disruption of its financial operations. Accordingly, cause exists to justify (a) the immediate entry of an order granting the relief sought herein and (b) a waiver of Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## NOTICE

26. Notice of this Motion will be provided to (a) the Office of the United States Trustee; (b) the holders of (i) the 20 largest unsecured claims against Carla's Pasta, Inc., and (ii) the claim of the Dennis Engineering Group, the singular unsecured creditor scheduled by Suri Realty, LLC;; (c) Scott Rosen, Cohn Birnbaum & Shea, P.C, counsel to the People's United Bank, N.A. as Administrative Agent, and prepetition secured lender; (d) Mia D'Andrea, Chapman and Cutler LLP, counsel to BMO Harris Bank, N.A,, prepetition secured lender; (e) the Internal Revenue Service; (f) the United States Attorney's Office for the District of Connecticut; and (g) any other party that has requested service pursuant to Bankruptcy Rule 2002 as of the time of service (collectively, the "Notice Parties").

## NO PRIOR REQUEST

27. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

February 8, 2021

  /s/ *Tara L. Trifon*
Tara L. Trifon (ct28415)
Locke Lord LLP
20 Church Street 20th Floor
Hartford, CT 06103
Tel: 860-541-7740
email: tara.trifon@lockelord.com

Adrienne K. Walker (*pro hac vice* pending)
Locke Lord LLP
111 Huntington Avenue
Boston, MA 02199
Tel: 617-239-0211
email: awalker@lockelord.com

Brian A. Raynor (*pro hac vice* pending)
Michael B. Kind  (*pro hac vice* pending)
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606
Tel: 312-201-2392
email: braynor@lockelord.com
email: michael.kind@lockelord.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*