**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **CARLA'S PASTA, INC.** | **Case No. 21-20111 (JJT)** |
| Debtor. | (Joint Administration Requested with Suri Realty, LLC (Case No, 20-21270) |

**AMENDED UNITED STATES TRUSTEE'S STATEMENT AND
OMNIBUS OBJECTION TO CERTAIN OF THE DEBTOR'S
FIRST-DAY MOTIONS: ECF 10, ECF 11, and ECF 16**

William K. Harrington, United States Trustee for Region 2 ("United States Trustee"), in furtherance of his duties and responsibilities set forth in 28 U.S.C. § 586(a)(3) and (5), respectfully files this Statement concerning Carla's Pasta, Inc.'s ("Debtor") "First Day" Motions set down for hearing on Wednesday, February 10, 2021 at 10:00 a.m. via Zoomgov video. In support of his Statement, the United States Trustee, through his undersigned counsel, states the following:

**I.     BACKGROUND**

1.    On February 8, 2021, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. ECF 1. The Debtor failed to file bankruptcy schedules or statements but did file an incomplete and deficient List of 20 Largest Unsecured Creditors ("20 Largest").

2.    The United States Trustee is in the process of soliciting creditor interest in the formation of one or more Official Committee(s) of Unsecured Creditors ("Committee"); however, the Debtor's 20 Largest failed to include the name, telephone number and email

address of each creditor's contact person as required on Official Form 204. *See* ECF 1, pages 11 – 13. Such deficiencies will make it more difficult for the United States Trustee to appoint a Committee within a reasonable period of time as the United States Trustee's solicitation will have to "wend its way" through the creditor's organization before finding the appropriate person, if at all.

3. The Debtor continues to operate its business and manage its own affairs as a debtor- in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

4. On February 8, 2021, the Debtor filed a series of first-day pleadings, including (i) motion for joint administration with In re Suri Realty, LLC (20-21270) [a wholly-owned subsidiary of the Debtor] ("Joint Administration Motion") ECF 2; (ii) motion for interim and final order authorizing Debtor financing, use of cash collateral, providing adequate protection, and granting liens, security interests and super-priority claims ("Financing Motion") ECF 10; (iii) motion for an order authorizing Debtor to pay pre-petition wages, salaries, reimbursable expenses, and benefits ("Payroll Motion") ECF 11; (iv) motion for an order authorizing Debtor to maintain existing bank accounts, business forms and existing cash management systems, and declaring that 11 U.S.C. § 345(b) is "satisfied" ("Bank Accounts Motion") ECF 16; (v) motion for an order authorizing Debtor to honor and continue customer programs and obligations and authorizing banks to honor and process requests related thereto ("Customer Programs Motion") ECF 18); (vi) motion for an order authorizing Debtor to continue insurance programs and pay obligations with respect thereto ("Insurance Motion") ECF 19; (vii) motion for an order establishing adequate protection and prohibiting utility services companies from negatively

impacting the Debtor ("Utilities Motion") ECF 20, and (viii) motion for an order authorizing Debtor to pay certain prepetition tax obligations and related relief ("Taxes Motion") ECF 21.

5.    In addition to the eight "First Day" Motions listed above, the Debtor has filed a motion for an order approving bidding procedures, approving notice procedures, approving procedures for the assumption and assignment of contracts, scheduling an auction and sales hearing, approving the asset purchase agreement with a successful bidder, authorizing the sale free and clear of substantially all of Debtor's assets ("Bidding Procedures/Sale Motion") ECF 28.  As with its First Day Motions, the Debtor has sought an expedited hearing on the Bidding Procedures/Sale Motion. ECF 29.

6.    The United States Trustee has filed a "Preliminary Statement" concerning the First Day Motions which questions the need to hear all eight of the Debtor's Motions on less than 48-hour notice. ECF 25.

## II.    ISSUES

**<u>Financing Motion</u>  (ECF 10)**

**Stipulations Section:**

7.    A review of the Debtor's proposed Interim Financing Order, the United States Trustee must comment that it looks very much like a "FINAL" financing order with that proposed Interim Financing Order consisting of twenty-eight (28) pages without signature pages or exhibits.

8.    The proposed Interim Financing Order seeks the Court's imprimatur on the granting of financing, use of cash collateral, granting of adequate protection and the granting of super-priority liens to BMO Harris Bank, N.A. and People's United Bank ("BMO Harris" and "PUB," respectively or "Lenders," collectively). ECF 10-1.

9. The proposed Interim Financing Order contains a series of "stipulations" between the Debtor and the Lenders which, many of such stipulations, are converted into FINDINGS of the Court in the Proposed Financing Order. ECF 10-1, pages 3 – 8 of 32.

10. The proposed Interim Financing Order contains a "stipulation" that states that the Debtor and Suri Realty, LLC are "affiliates, sharing certain common owners." ECF 10-1, page 4 of 32, ¶ B. To the best of the United States Trustee's knowledge and belief, Suri Realty, LLC is a wholly owned subsidiary of the Debtor.

11. The proposed Interim Financing Order contains a "stipulation" concerning the existence of several financial agreements between the Debtor and the Lenders. ECF 10-1, page 4 of 32, ¶ D. To the United States Trustee's knowledge and belief, those financial documents, upon which at least a portion of the proposed "stipulations" depend, have not been made available to interested parties in the Debtor's bankruptcy case.

12. The proposed Interim Financing Order contains a "stipulation" which suggests that the rights of "other part[ies]" have not been prejudiced ***except for*** . . . and then refers to decretal paragraph 32. ECF 10-1, page 4, of 32, ¶ E and page 5 of 32, ¶ F, respectively. A review of paragraph 32 demonstrates a callous disregard for the rights of "other part[ies]," including a Committee, by limiting "challenges" to the Lender's claims and liens to a ridiculously brief period. ECF 10-1, page 25 of 32, ¶ 32. This is particularly troublesome given that the Debtor's failure to file a complete and conforming 20 Largest has compromised the ability of the United States Trustee to rapidly form and appoint a Committee. *See* ¶ 2 above. Further, it is inappropriate to set such a "challenge" time limit for a Committee before the solicitation for the Committee formation has even been transmitted to eligible creditors.

13. The proposed Interim Financing Order contains a "stipulation" in which the Debtor "waive[s] and releases any and all causes of action and claims against the Lenders and their agents, representative, assigns and successors." ECF 10-1, page 5 of 32, ¶ E. The Debtor is a fiduciary and cannot surrender potential causes of action and issue releases without the opportunity to vet any potential causes of actions before the Court and answer questions pertaining thereto posed by creditors either at a meeting of creditors or otherwise. General releases are not favored without such vetting and certainly not within 48 hours of the filing of the Debtor's bare-bones petition and certainly not in an Interim Financing Order.

14. Where there has been no opportunity for a Committee, creditors, the United States Trustee or other parties in interest to have sufficient notice and an opportunity to inquire and to challenge the stipulations between the Debtor and the Lenders before the Bankruptcy Court, it is inappropriate for the Bankruptcy Court to make any but the most cursory FINDINGS and those FINDINGS only to the extent necessary to prevent irreparable harm to the Debtor and bankruptcy estate.

15. Should the Debtor be able, through the presentation of credible evidence, to establish the necessity of obtaining emergency financing and emergency use of cash collateral, that relief should be limited only to what is absolutely needed for a reasonable period of time and such borrowing be limited to only the extent of absolutely necessary expenses needed to preserve the value of the Debtor's bankruptcy estate and where those expenses cannot be covered by the Debtor's use of the Lender's cash collateral.

16. The proposed Interim Financing Order grants of super-priority liens or claims to the Lenders should be similarly limited to the extent of the diminution of the value of their

claims during the period of time covered by the proposed Interim Financing Order and only if the Lender's claims and proposed lending are deserving of super-priority status.

17. The Debtor's request for borrowings of up to $750,000.00 under the Interim Financing Order are not adequately supported as being necessary on an emergency basis in Debtor's Interim Financing Motion or the Sandeep Gupta Affidavit in support thereof. ECF 4. The Debtor should be prepared to provide additional evidence as to the amount that is absolutely needed during a reasonable interim period to prevent the irreparable harm to the Debtor's bankruptcy estate.

18. The proposed Interim Financing Order seeks to grant "immunity" and Section 364€status to the Lenders without a scintilla of evidence that such treatment is deserved or necessary. Such a "grant of immunity" is inappropriate in the Interim Financing Order and without vetting potentially with discovery by a Committee not yet in existence . ECF 10-1, page 7 of 32, ¶¶ L and M, respectively.

19. The Interim Financing Motion and Order appear to be silent as to whether the Lenders are further secured by assets outside of the Debtor's and Suri Realty, LLC's ownership or whether co-debtor(s) exist against which the Lenders might make recovery. Such conditions, should they exist, should be disclosed in the interests of transparency. Of note is that the Debtor has failed to file bankruptcy schedules and/or statements which would shed light on such an inquiry. Such information should be provided by the Debtor or the Lenders at the First Day Motions hearing.

20. The Interim Financing Order refers to "the DIP Credit Agreement" in several places. ECF 10-1, page 9 of 32, ¶4. The United States Trustee has not had the opportunity to

review such a "DIP Credit Agreement" which the Debtor "promises" will be "forthcoming," but which does not appear to have been filed. ECF 10-1, page 30 of 32, Exhibit A [blank].

21. As Exhibit B to the proposed Interim Financing Order, the Debtor and Lenders list certain "Milestones" to which the Debtor must adhere to avoid creating an "event of termination. ECF 10-1, page 31 of 32, Exhibit B and page 13 of 32, ¶ xiii, respectively. The setting of "drop-dead milestones" to facilitate a "bums-rush" sale of the Lender's claimed collateral without giving other constituencies in Debtor's bankruptcy case an opportunity to opine on that frighteningly-swift sale of substantially all of Debtor's and Suri Realty, LLC's assets or suffer the "termination of emergency financing and emergency use of cash collateral, all within 48 hours of the Debtor's filing of Debtor's bare-bones petition and before a Committee has even been solicited, is inappropriate in the Interim Financing Order.

22. The proposed Interim Financing Order grants to the Lenders a "get out of jail free card" to allow Lender to breach the automatic stay provisions of 11 U.S.C. § 362(a) under certain conditions contained in the proposed Interim Financing Order. ECF 10-1, page 16 of 32, ¶ 18. The Interim Financing Order is no place for the Lenders to insert a "self-help" provision allowing them to act without further Order of the Court. Such is not appropriate, except in very rare occasions, in a *Final* Financing Order and should not be contained in an interim order.

23. The proposed Interim Financing Agreement discusses a "carve out" for Debtor's counsel, Debtor's Financial Advisors, the Debtor's Chief Restructuring Officer ("CRO"), Debtor's other professionals and Committee professionals in the maximum amount of $500,000.00. While giving "lip-service" to providing a carve-out to the Committee

professionals, the "hand that giveth" then takes away a carve out for Committee professionals by not providing for such carve-out(s) in the Interim Financing Order's proposed budget. ECF 10-1, page 18 of 32, ¶ 20.  It appears that the Debtor and the Lenders do not wish to give Committee and its professionals either the time to perform their respective fiduciary duties, but they also wish to make sure the Committee professionals cannot be compensated for their services.

24. The memorialization of professional "carve-outs" are not usually necessary in an Interim Order, but usually do no harm.  In this case, however, the harm to Committee professionals is embedded in the Interim Financing Order and its "budget."  The United States Trustee objects most strenuously to the Lenders' $500,000.00 "carve-out" not being allocated for each professional if "carve-out" provisions are to be included in the Interim Financing Order.  The Debtor's counsel and the Debtor's CRO, as noted in the "budget" have allocated to themselves hundreds of thousands of dollars just for the period of the projected budget.  It is all too likely that there will be nothing there for the Committee professionals if the "carve-out" provisions are "set in stone" as part of this proposed Initial Financing Order.

25. The proposed Interim Financing Order provides for some limitations on the use of the Lenders' "carve-out." ECF 10-1, page 19, ¶ 20(b).  That language is clear that an otherwise "eligible" professional may not bring an action attacking or seeking to diminish the claims of the Lenders.  Such a provision is appropriate; however, for the sake of clarity, neither the Debtor's professionals nor the Committee's professionals should be denied use of the "carve-out" for investigating the claims of the Lenders as such falls within the fiduciary duty of both.

26. The proposed Interim Financing Order refers to "Postpetition Loan Documents" but does not define the term. ECF 10-1, page 21 of 32, ¶ 23.  The United States Trustee has not been able to examine or even find "Postpetition Loan Documents."

27. The proposed Interim Financing Order purports to bind all "Successors."  The United States Trustee objects to such binding of parties either without adequate notice or yet not in existence such as trustees or a Committee except to the extent that Lender's reliance on the proposed Interim Financing Order has resulted in a diminution of the value of its claims.

28. The proposed Interim Financing Order conditions the release[s], discharge[s], waiver[s] and agreement[s] set forth therein are subject to the very, very brief objection period the Lenders deign to grant a Committee; however, it appears that all other parties are bound. ECF 10-1, page 23, ¶ 30.  This despite the fact that few if any of Debtor's unsecured creditors may be aware of Debtor's bankruptcy filing. Such parties will not yet have received regular mail notice of that filing.  It is inappropriate for the Lenders' to dictate who will receive due process and who will not especially in the Interim Financing Order.

29. While not surprising even in what appears to be a fairly draconian proposed Interim Financing Order which minimizes the rights of other constituencies if not eliminating such rights, the Lenders which to receive the Bankruptcy Court's blessing in determining for themselves that they will not be liable to any third party for their actions including, but not limited to suffering a determination that the Lenders be deemed, whether deservedly so or not, of being in "control of the operations of [the] Debtor [or Suri Reality, LLC]." ECF 10-1, page 24, ¶ 31.  No notice has been given, no discovery has taken place, no evidence has been presented which could allow the Bankruptcy Court to make such a finding which cuts off the

rights of other constituencies in Debtor's bankruptcy case to question the conduct of the Lenders either pre-petition or post-petition.

**Payroll Motion**  (ECF 11)

30. The United States Trustee has requested but has not yet received a list of Debtor's employees which it wishes to pay under the Debtor's Payroll Motion. Such a list is important as it guards against the possible payment to insiders, managers or supervisors beyond the value of services provided. The United States Trustee does not object to the payment of pre-petition wages and salaries which are reasonable and reflect the value of the services provided so long as those payments to not exceed the limits set down for priority unsecured wages and benefits set by 11 U.S.C. § 507(4)(A) and (B) and (5)(A) and (B). Debtor's Payroll Motion does not provide the requisite evidence that is required for the Court to determine whether the proposed payments fall within the applicable provisions of Section 507.

31. The proposed Payroll Order does not identify the specific financial institution(s) or which specific payroll accounts are to be subject to the proposed Order. As the payment of pre-petition wages and salaries are a considerable and serious exception to the Bankruptcy Code's prohibition to payment of Debtor's pre-petition obligations, it is incumbent on the Debtor to strictly limit the application of the proposed Order to narrowly and specifically define what obligations are to be paid and which are not to be paid and to give clear and unambiguous guidance to particular financial institutions as to what account or accounts may be utilized so that the financial institution(s) may correctly and quickly act in accordance with the Court's Order and does not result in other of Debtor's pre-petition creditors being paid inadvertently.

32. The proposed Order also contains language where the Court is "authorizing but not directing the Debtor to pay and honor certain prepetition claims and obligations." ECF 11-1, page 2 of 5.  The United States Trustee objects to leaving it to the Debtor's discretion of which of its employees it chooses to pay without those employees being given the prior opportunity to challenge the Debtor's non-payment of his or her wages, salary, benefits, etc. The Debtor should not have the largess to choose who benefits without the prior involvement of the Bankruptcy Court and an opportunity for aggrieved parties to be heard by the Court. Contrast this "authorized" language with the "authorized" only language which applies to financial institutions in the proposed Order.

33. The United States Trustee believes that if the Court authorizes the Debtors to make payments on prepetition employee compensation, the Debtors should be compelled to make those payments, and that equity, fundamental fairness and due process dictate that either all employees should be paid their pre-petition wages/benefits up to the Section 507(a)(4) and (5) limit or those employees which the Debtor does not wish to pay must be put on notice of such, and that the Debtor make its case before the Bankruptcy Court why such an employee should not be paid.  The only possible exception that comes to mind would be suspending the payment of an owner's "draw."

34. Further, neither the "financial institutions" who would "honor" the payments nor the specific financial accounts from which the payments would be taken are disclosed by the Debtor.  Debtors should make specific disclosures concerning the names of banks and their payroll accounts so that the Court's instructions to the financial institutions are clear and unambiguous as to whom and what the proposed Order refers.

35. Although the Payroll Motion is couched in terms of making prepetition payments, The proposed Payroll Order contains provisions for authorizing the Debtor to "modify or discontinue any Compensation and Benefits Program to reduce or eliminate program expenses or the benefits provided thereunder." ECF 11-1, page 4 of 5, ¶ 3.  To the extent that the Bankruptcy Court's "authorization" is needed to prospectively curtail compensation and benefit programs, such a provision should not be "hidden" in a motion seeking retroactive relief such as paying prepetition wages and salaries.  To do otherwise is to forgo the necessity of providing notice and due process to affected parties.

36. The proposed Payroll Motion also requests that the Bankruptcy Court "authorize but not direct" the Debtor to pay administrative expenses associated with the payments made under this Order.  A debtor-in-possession is required to pay all administrative expenses as they become due or suffer consequences associated with insolvent estates should the failure to pay be a result of such insolvency.  The Debtor should either pay all administrative expenses when they become due or should provide the Bankruptcy Court with specific reasons for not doing so which find support in the Bankruptcy Code.

37. The United States Trustee has requested that the Debtors provide him with a list of those employees and managers which are to be paid pursuant to the proposed Order on the Payroll Motion including therein the appropriate amounts to be paid under the proposed Order and whether the person is an owner, manager, supervisor or rank and file employee.  As yet, the Debtors have failed to provide such a list.

38. Since the United States Trustee has not received the information requested from the Debtors, to wit:  one or more lists of employees, their status as employees (owner, manager, supervisor or rank and file), and the amount of prepetition wages to be paid under the

proposed Order, the United States Trustee does not have the information necessary to form an opinion or verify that such proposed compensation payments are within the limits set by Section 507(a)(4) and (5).

**Bank Accounts Motion  (ECF 16)**

39.     The Debtor's Bank Accounts Motion discloses the existence of three pre-petition financial accounts at secured creditor People's United Bank ("PUB"). ECF 16, page 3, ¶ 8. PUB is an institution on the list of the United States Trustee's "approved depositories" for the holding of debtor-in-possession funds.

40.     The Debtor requests the Court's authority to maintain their current financial accounts at People's United Bank.  The United States Trustee does not object to that relief so long as the following takes place:  (a) PUB must agree to designate the Debtor's financial accounts as "debtor-in-possession accounts" and provide all of the protections and reporting as are required in its agreement with the United States Trustee pertaining to such accounts; (b) the Debtor must file a report within 30 days of the commencement of its case which demonstrates that the Debtor has investigated whether any non-Court-approved payments were made on account of one or more pre-petition debts; (c) the Debtor shall, in all cases, add the legend "Debtor-in-Possession" to its checks or obtain and utilize a stamp with the same designation.

41.     The Debtor seeks to have the Court "deem" the Debtor's pre-petition financial accounts to be "debtor-in-possession" accounts.  That request is beyond the Bankruptcy Court's authority as the designation of "debtor-in-possession" account is a product of the agreement between an "approved depository" and the United States Trustee.

42.     The Debtor also seeks to use the existing "business forms and correspondence" the Debtor enjoyed pre-petition.  The United States Trustee must remind the Debtor that the

days of engraved letterhead and offset-printed forms are archaic and seldom used in business since the-turn-of- the century. Most business forms are printed anew in whatever form and on whatever blank stock the business chooses. The Debtor has not made a showing that it cannot print its own forms in a way that discloses its status as a Chapter 11 debtor-in-possession.

43. As the former chief bankruptcy attorney for Federal Deposit Insurance Corporation's ("FDIC") Manhattan office, with responsibility for the Eastern half of the United States, I, for one, deeply appreciate the Debtor's faith in the FDIC vis-à-vis the protection of Debtor's deposits; however, FDIC deposit insurance is limited and will not "cover" the Debtor for cumulative deposits above those insurance limits should People's United Bank fail (which the United States Trustee hopes will never happen). The protections afforded debtor-in-possession accounts far exceed the FDIC Deposit Insurance limits and are virtually unlimited. Debtor-in-possession accounts are also subject to reporting requirements by the "approved depository" to the United States Trustee which further inures to the safety of a debtor-in-possession's deposits.

44. As it is within the authority of People's United Bank to designate and treat the Debtor's financial accounts as debtor-in-possession accounts, there is no need for the Court to consider the waiver of Section 345. A Debtor may change "approved depositories" during the tenure of its Chapter 11 case, but it may not move its deposits to a non-approved depository institution without obtaining the Court's express authority to do so upon notice to the United States Trustee and all creditors. If the Debtor's Bank Motion seeks that authority at this early stage of its case, the United States Trustee respectfully objects.

45. One of the primary reasons for the closing of prepetition bank accounts upon the filing of a Chapter 11 case is to ensure that prepetition checks which have not yet been

negotiated are not allowed to be negotiated thus favoring some prepetition creditors over others or that other prepetition claims have not been inadvertently paid by a debtor. Leaving prepetition accounts open and operating into and during the administration of the Chapter 11 case encourages such results. In this case, that purpose can be adequately fulfilled by the filing of a report of disbursement filed by the Debtor about 30 days post-petition demonstrating that the Debtor has investigated and has discovered whether any non-Court-approved payments have been made on prepetition claims.

### III. CONCLUSION

Wherefore, the United States Trustee respectfully requests that the Court deny the Debtor's Motions to the extent they do not address the concerns and issues raised by the United States Trustee, and grant such other relief as is appropriate.

Dated: February 9, 2021  
      New Haven, Connecticut

Respectfully submitted,

WILLIAM K. HARRINGTON  
UNITED STATES TRUSTEE FOR REGION 2

By:   /s/ Steven E. Mackey  
Steven E. Mackey/ct09932  
USDOJ Trial Attorney  
Office of the United States Trustee  
Giaimo Federal Building, Room 302  
150 Court Street  
New Haven, CT 06510  
(203) 773-2210