**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

---------------------------------------------------------- X
In re:                                                     :    Chapter 11
                                                           :
CARLA'S PASTA, INC., ET AL.,                               :    Case No. 21-20111-JJT
                                                           :
           Debtors.                                       :    (Jointly Administered)
                                                           :
_____                        X
                                                           :
SURI REALTY LLC,                                           :
                                                           :
           Movant,                                        :
                                                           :
v.                                                         :
                                                           :    July 22, 2021
                                                           :
TOWN OF SOUTH WINDSOR,                                     :
CONNECTICUT,                                               :
                                                           :
           Respondent,                                    :
_____                        X

**MOTION OF TOWN OF SOUTH WINDSOR FOR RELIEF FROM ORDER GRANTING
DEBTORS' MOTION FOR DETERMINATION OF TAX LIABILITY**

The Town of South Windsor (the "Town"), hereby moves pursuant to Rule 60(b)(1) and (b)(6) of the Federal Rules of Civil Procedure, as made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure, for relief from this Court's *Order Granting Debtors' Motion to Determine Tax Liability Under 11 U.S.C. § 105 and 505* entered on May 26, 2021 (ECF No. 646) (the "Tax Order"). The Town seeks relief from the Tax Order on grounds of factual and legal errors in the Debtors' Motion for Determination of Tax Liability filed on April 26, 2021 (ECF No. 483) (the "Tax Motion"). Specifically, the Debtors' failure to exercise their statutory right to appeal under Connecticut state law for the relief belatedly sought through the Tax Motion precluded the entry of the Tax Order pursuant to 11 U.S.C. § 505(c). Alternatively, the Town requests that the Court

11596756v1

exercise its broad equitable discretion in granting relief pursuant to Fed. R. Civ. P. 60(b)(6) due to the Town having not received notice of the Tax Motion and the substantial prejudice that would result in allowing the unopposed Tax Order to stand without the Court's review and consideration of the substantive objections raised by the Town as set forth herein. Accordingly, the Town respectfully requests that the Court grant relief from the Tax Order to fully evaluate the merits of the Tax Motion, and based on such evaluation, reverse entry of the Tax Order. In further support of this motion, the Town states:

## RELEVANT BACKGROUND

1. On October 29, 2020, an involuntary chapter 7 petition was filed against Debtor Suri Realty LLC ("Suri"). *See* Docket No. 20-2170 ("Suri Case") at ECF 1. Suri's involuntary case was converted to a case under chapter 11 on December 17, 2020. *See* Suri Case at ECF 1. Suri has continued to operate and manage its properties businesses as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. According to Schedule A/B filed by Suri on December 31, 2020, Suri was the fee simple owner of property located at 50 Talbot Lane, South Windsor, Connecticut (the "Subject Property"). The Subject Property constitutes the real property upon which the production facility of Carla's Pasta, Inc. consisting of approximately 150,000 square feet was located.[1]

3. The Court entered an Order approving a sale of the Debtors' assets, including the Subject Property, to CP Foods LLC and NFP Real Estate LLC (the "Purchasers") on April 26, 2021 (ECF No. 486). The closing on the sale occurred on April 30, 2021.

---

[1] Schedule D to Suri's Chapter 11 petition also identified a fee simple interest in the property located at 280 Nutmeg Road, South Windsor, Connecticut, which property was not subject to the relief granted in the Tax Order.

11596756v1

4. Schedule D to Suri's petition listed the Town as a secured claimant having a claim in the amount of $120,995.35.

5. On February 8, 2021, Carla's Pasta, Inc. ("CPI") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. *See* Docket No. 21-20111 ("CPI Case").

6. CPI listed the Town on Schedule E/F filed on February 24, 2021 as a creditor holding a priority, unsecured, unliquidated and contingent claim in an undetermined amount. *See* CPI Case ECF No. 161 at 24.

7. No appearance has been filed on behalf of the Town in the Debtors' cases.

**The Abatement Agreement**

8. Pursuant to Conn. Gen. Stat. § 12-65b, the Town established a tax incentive program to encourage the development and expansion of businesses in the Town through tax and other economic incentives. Affidavit of Mary Huda, Assessor of Town of South Windsor ("Assessor's Aff.") ¶ 5. The tax incentive program is designed to retain and attract businesses that would generate substantial additional tax revenues and employment opportunities for the Town while providing quality goods and services. *Id.*

9. Conn. Gen. Stat. § 12-65b requires that any tax incentive offered by a municipality or town be authorized "by affirmative vote of its legislative body." Conn. Gen. Stat. § 12-65b. Assessor's Aff. ¶ 6.

10. Over the last 20 years, Suri applied for and received substantial tax relief for the Subject Property under the tax incentive program. Assessor's Aff. ¶ 7. In 2001, the Town granted Suri a 100% abatement on the assessment of real property and personal property taxes for a period of seven years (the "2001 Abatement") for its construction of a 46,500 square foot production facility and office (the "Initial Construction"). Assessor's Aff. ¶ 8. The 2001 Abatement was

granted solely for on the assessed value of the improvements made pursuant to the Initial Construction, and not upon the assessed value of the land. *Id.*

11. In March 2012, the Town granted further tax relief of a 50% abatement on real property taxes for five years (the "2012 Abatement") on the Debtors' expansion of 26,000 square feet (the "2012 Expansion"). Assessor's Aff. ¶ 9, Ex. 1. Notably, the 2012 Abatement was granted only upon the assessed value of the 2012 Expansion, and not as to the assessed value of the land or the Initial Construction, because the Town had previously granted tax relief in 2001 for the Initial Construction. Assessor's Aff. ¶ 9.

12. In or about July 2016, Suri submitted a Request for Tax Abatement as an incentive to invest an estimated $23,448,300 in total costs for land and building improvements and to construct a 156,322 square foot expansion in the Town (the "Improvements and Expansion"). Assessor's Aff. ¶ 10.

13. On September 6, 2016, Town Council voted to adopt a resolution (the "2016 Resolution") authorizing a 70% reduction on the Improvements and Expansion for a period of seven (7) years. Assessor's Aff. ¶ 11 at Ex. 2. The 2016 Resolution estimated an annual tax benefit reduction of $219,810 (calculated based on the mill rate applicable in 2016), commencing with the Grand List following the date the Certificate of Occupancy is issued. *Id.* at 12. Like the 2012 Abatement, the estimated tax benefit reduction granted in 2016 was based solely upon an abatement on the gross assessed value of the Improvements and Expansion, and not based upon the gross assessed value of the entire parcel because the Town had previously granted abatements on the Subject Property. *Id.*

14. The 2016 Resolution also imposed several other conditions upon the Debtors to receive the tax benefit. It required them to meet an estimated construction costs figure of

11596756v1

$23,448,300, and further mandated the continued payment of real estate taxes on the Debtors' facility for a minimum of ten years from the date of the issuance of the Certificate of Occupancy. Assessor's Aff. ¶ 13 at Ex. 2.  Failure to meet either of those conditions required the Debtors to refund to the Town all tax benefits received.  *Id.*  The 2016 Resolution was also conditioned upon the Debtors' execution a written agreement memorializing the terms of the 2016 Resolution.  *Id.*

15. On August 14, 2019, CPI was issued a Certificate of Occupancy for its expansion. Assessor's Aff. ¶ 14 at Ex. 3.

16. On or about October 2, 2019, the Town and Suri entered into an "Agreement Regarding Real Property Tax Assessment" (the "Abatement Agreement") incorporating the terms set forth in the 2016 Resolution.[2]  Assessor's Aff. 15 at Ex. 4.  Notably, the 2016 Resolution -- approved by the unanimous vote of Town Council -- formed the sole basis for the Town Manager's authority to enter into the Abatement Agreement with the Debtors.  *Id.*

17. Consistent with the 2016 Resolution, the Abatement Agreement granted Suri a 70% reduction on the real property assessment for the Subject Property commencing on the Grand List for the period following the issuance of the certificate of occupancy at any time after June 1, 2019. Assessor's Aff. ¶ 16.

18. The Abatement Agreement included additional conditions to ensure Suri's compliance with the benchmarks set forth in the 2016 Resolution.  For example, the Abatement Agreement required Suri to furnish an affidavit within one year of commencement of operations affirming the (i) actual value of the site expansion to ensure that the expansion substantially met the requirements set forth in the Abatement Agreement, (ii) the cost of construction to meet the

---

[2] The Abatement Agreement was assumed by Suri and assigned to the Purchasers as part of the sale of the Subject Property.

minimum required investment of $23,448,300, and (iii) the number of employees employed at its facility. Assessor's Aff. ¶ 18. No affidavit of compliance has yet been filed with the Town. *Id.*

19. On January 31, 2020, approximately four months after the execution of the Abatement Agreement by the parties, the Town issued a Real Property Assessment Notice of the real property tax assessments for the 2019 Assessment Year (the "2019 Assessment Notice"). Town. Assessor's Aff. ¶ 18 at Ex. 5. The 2019 Assessment Notice formed the basis for the 2020 real estate tax bill. *Id.*

20. The 2019 Assessment Notice furnished a clear breakdown of the assessed values used to determine the amount of the abatement granted by the Town pursuant to the 2016 Resolution and the 2020 taxes. Assessor's Aff. ¶ 19. Specifically, the Assessment Notice showed (i) the 2018 gross assessed value ($9,986,900) of the Subject Property without the Improvements and Expansion, and (ii) the 2019 gross assessed value reflecting a substantially higher gross assessed value ($20,883,500) comprised of the assessed value of the Subject Property with the Improvements and Expansion. *Id.* The 2019 Assessment Notice also showed an abatement in the amount of $7,627,600. *Id.* Even a cursory review of this Notice was sufficient to alert Suri that the 70% abatement was not applied by the Town to the total gross assessed value of the Subject Property (as Suri later sought through the Tax Motion).

21. The 2019 Assessment Notice further showed there was no "mathematical error" or "miscalculation" in the Town's determination of the abatement amount or the 2020 taxes. The Town calculated the abatement based upon 70% of the gross assessed value of Improvements and Expansion proposed by the Debtors. Assessor's Aff. ¶ 20. The Town arrived at this value by subtracting the 2018 grossed assessed value from the 2019 gross assessed value, and multiplying

-6-

the difference (i.e. the gross assessed value for the Improvements and Expansion) by 70%, as illustrated below. *Id.*

($20,883,500)  **(2019 Gross Assessed Value for Original Parcel Plus Improvements and Expansion)**

- ($9,986,900)  **(2018 Gross Assessed Value for Original Parcel)**

$10,896,600  **(2019 Gross Assessed Value for Improvements and Expansion Only)**

$10,896,600 x 70% = $7,627,200 **(Exemption/Abatement Amount)**

22.  The approach undertaken by the Town in calculating the 2019 Abatement based on the assessed value of the Improvements and Expansion was fully consistent with the approach it had taken with the 2001 and 2012 Abatements granted to Suri. Assessor's Aff. ¶ 21.

23.  The 2019 Assessment Notice also reflected a *net* total assessed value of $13,255,900 upon which the 2019 Mill Rate was applied to determine 2020 tax amounts due. Assessor's Aff. ¶ 22. The net total assessed value comprised the (i) the 2018 grossed assessed value for the original parcel ($9,986,900) plus (ii) the remaining assessed value of the land and building improvements after applying the 70% abatement ($3,268,980). *Id.* Notably, the annual tax savings to Suri under this calculation totaled approximately $288,933.49, an amount similar to the estimated tax savings of $219,810 set forth in the 2016 Resolution (based on the 2016 mill rate).

24.  The Assessment Notice also notified Suri of its statutory right pursuant to Conn. Gen. Stat. § 12-111 to file an appeal on or before February 20, 2020 to dispute the Town's assessment. No such timely appeal was filed. Accordingly, Suri was barred from belatedly raising issues in its Tax Motion that it failed to timely raise through a timely appeal under state law. *City of Danbury v. Dana Inv. Corp./Lot No. GO8065*, 249 Conn. 1, 12, 730 A.2d 1128, 1136 (1999) ("Public policy requires, therefore, that taxes that have not been challenged timely cannot "be the

-7-

11596756v1

subject of perpetual litigation, at any time, to suit the convenience of the taxpayer. . . A taxpayer who has not sought redress in an appropriate manner is foreclosed from continuing litigation outside [those] statutes.")

25. On or about July 1, 2020, the Town issued a bill for first installment for the 2019 tax year. The bill applied a mill rate of 37.8800 to a net assessed value of $13,255,900 (the same net assessed value set forth in the 2019 Assessment Notice), reflecting a total annual tax of $502,133.50. Assessor's Aff. ¶ 23, Ex. 6.

26. After the issuance of the July 2020 bill, on July 6, 2020, CPI's then Chief Financial Officer, Jack Herpok, contacted the Town to inquire about the assessed values and taxes set forth in the bill. Assessor's Aff. ¶ 24, Ex. 7.

27. On July 29, 2020, counsel for the Town informed Mr. Herpok that the Abatement Agreement applied only to the improvements related to the expansion of CPI's facility because CPI's original facility had previously received an abatement. Assessor's Aff. ¶ 25.

28. On November 5, 2020, counsel for CPI, Attorney Randy Lovallo, contacted the Town to inquire again about whether the Abatement Agreement applied to the entire property. Assessor's Aff. ¶ 26. The Town Assessor spoke with Attorney Lovallo on November 9, 2020 and explained that there was no error in the 2020 tax bill on the Subject Property. *Id.*

29. By email dated November 17, 2020, counsel for the Town advised Attorney Lovallo that "the tax fixing agreement related to the expansion of Carla's facility was directly related to the increase in investment for that expansion and not for the entire property thereafter. Indeed, a tax abatement was already granted to Carla's for the initial project many years ago. Consequently, a tax abatement in 2019 is 70% of the increased value of the property relative to the expansion only." Assessor's Aff. ¶ 27; Ex. 8.

11596756v1

30. By hand-delivered letter to the Town dated November 16, 2020, co-counsel for the Debtors submitted partial payment for the 2020 tax amounts due for the Subject Property, claiming that the tax invoice "[did] not accurately reflect the 70% reduction in the real property taxes on 50 Talbot Lane pursuant to the Agreement Regarding Real Property Tax Assessment, dated October 3, 2019." Counsel indicated in the letter that Suri was "eager to discuss" the issue. Assessor's Aff. ¶ 28; Ex. 9.

31. Suri made no further effort to contact the Town to inquire about the basis of the 2020 tax bill or applicable abatements. Instead, it simply ignored the issue and its outstanding tax 2020 tax obligation and allowed ongoing interest to accrue. Assessor's Aff. ¶ 29.

32. Five months later, on the same date that the Court entered its Order approving the sale of Suri's assets to the Purchasers and four days prior to closing of the sale, Suri filed the Tax Motion. According to the Certificate of Service accompanying the Motion, Suri purportedly served the "Town of South Windsor (Attn: Tax Collector)" with notice of the Motion. The Certificate of Service does not specify the manner in which the Town was served, nor provide the address at which the Town was served.

33. Notwithstanding the certificate of service on the Tax Motion, the Town did not receive notice of the Tax Motion. Assessor Affidavit ¶ 30; Affidavit of Jennifer Hilinski-Shirley, Collector of Taxes (the "Tax Collector Aff.") ¶¶ 11, 12. The Town first learned of the Tax Motion and Tax Order on June 30, 2021, after being contacted by Debtors' counsel to issue a corrected 2020 tax bill. Tax Collector Aff. ¶¶ 9, 10. After being furnished with copies of the Tax Motion and Tax Order by Debtors' counsel, the Tax Collector's office conducted a diligent search of all notices received by the Tax Collector's office in connection with the Debtors' bankruptcy cases, all of which had been date-stamped on the date received and retained in the Town's files. Tax

Collector Aff. ¶ 11. A search of those notices reflected that the Town did not receive notice of the Tax Motion or Tax Order. *Id.*

34. In the Tax Motion, Suri purported "to seek redress of a clear mathematical error" and represented that it was not seeking to raise a challenge to real property for which a timely appeal had not been filed. This representation was plainly untrue. To the extent Suri claimed in the Tax Motion that the 70% abatement applied to the entire gross assessed value of the Subject Property, it was required to raise that issue as an appeal to the 2019 Assessment Notice, which identified an abatement amount far less than 70% of the entire assessed value, and further showed the net assessed value upon which the 2020 taxes were based. By failing to act, Suri improperly sought the same relief under section 505 that it was time-barred from obtaining through statutory remedies under state law.

35. Following a hearing held on May 19, 2021 (at which the Town did not appear due to its lack of notice on the Tax Motion), the Court issued an Order granting the Tax Motion. The Court's Order provides that "[t]he Debtors' tax liability to the Town of South Windsor in connection with its Real Property located at 50 Talbot Lane is determined to be $257,320.10[3] for the 2020 tax year. For the 2020 tax year and after, the Town of South Windsor is required to reduce the gross assessment by 70% prior to calculating the real property tax due on account of the Real Property as is required under the Abatement Agreement." The Town estimates that the total loss of revenue over the seven-year period of the 2019 Abatement resulting from the issuance of the Tax Order will be approximately $1,854,571 (which amount is calculated using the 2020 mill rate).

---

[3] The tax amount set forth in the Court's order appears to be an error – the calculation of the 2020 tax bill as set forth in the Tax Motion was $237,320.09.

-10-

**ARGUMENT**

I. **Numerous Grounds Justify Relief from The Tax Order in Favor of the Town.**

36. Federal Rule of Civil Procedure 60, made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 9024, governs the process by which a party may obtain relief from a judgment or order. Rule 60(b)(1) allows for relief from judgment based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Rule 60(b)(6), on the other hand, allows for relief from judgment based on "'any other reason justifying relief.'" *United Airlines, Inc. v. Brien*, 588 F.3d 158, 175 (2d Cir. 2009)

37. Rule 60(b)(6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case." *Matarese v. LeFevre,* 801 F.2d 98, 106 (2d Cir.1986) (internal quotation marks omitted). Relief is warranted "where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship, and should be liberally construed when substantial justice will thus be served." *Id.* (internal citations and quotation marks omitted).

38. Relief from the Tax Order is warranted on several grounds. First, the Tax Order was entered based upon a mistake of facts presented to the Court. The Debtors incorrectly represented in their Tax Motion that it was being filed merely to correct a "mathematical error" when the Debtors actually sought to challenge the assessed value upon which the 70% abatement was to be applied. The arguments raised in the Tax Motion should have properly been pursued as an appeal pursuant to Conn. Gen. Stat. § 12-111 to the 2019 Assessment Notice issued in January 2020, by which the Town notified the Debtors of the abatement amount, and the net assessed value upon which the 2020 taxes were to be calculated. The Debtors failed to file a timely appeal of the 2019 Assessment Notice by the statutorily prescribed deadline of February 20, 2020.

-12-

39. Moreover, the Debtors represented in the Tax Motion that they "attempted to resolve this informally through communications with the Town's tax officials, but has been unable to secure the correction." The communications submitted to this Court consist of the entirety of the efforts made by the Debtor toward such informal resolution. Beyond the cursory inquires made by various counsel and its former CFO, the Debtors made no meaningful attempt to understand the basis for the Town's calculation, or any other effort to resolve the matter. Moreover, as the attached correspondence shows, the Town responded to every inquiry made by the Debtor claiming a purported "miscalculation" of the 2020 taxes by explaining the reasons why the Debtors' view of the abatement was incorrect.

40. The Debtors' failure to file a timely appeal under state law also voids the legal grounds upon which the Tax Motion was premised. As acknowledged by the Debtors in the Tax Motion, 11 U.S.C. § 505(a)(2)(C) bars determination of "the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, *if the applicable period for contesting or redetermining the amount under applicable nonbankruptcy law has expired*." Here, there can be no reasonable dispute that the time to appeal the 2019 Assessment Notice expired months before Suri filed the Tax Motion. Accordingly, relief from the Tax Order should be granted on grounds of factual and legal error.

41. Ample grounds for relief on the Tax Order also exist under the catchall provision of Rule 60(b)(6) due to the Town's lack of notice of the Tax Motion and the substantial prejudice suffered by the Town in it its inability to object to the entry of the Tax Order. Although the Debtors' certificate of service shows apparent service upon the Town, the Town has submitted an affidavit herewith affirming that it did not receive notice of the Tax Motion or Tax Order.

42. A denial of relief from the Tax Order would also effect an extreme and undue injustice by providing the Debtors and the Purchasers with a tax windfall of over $1.8 million over a period of seven years, while also rewarding the Debtors for failure to exercise their statutory remedies to properly and timely raise the issues presented in the Tax Motion. Such an inequitable outcome should not be permitted without at least the opportunity for the Court to fully consider the merits of the Town's objections to the Tax Motion, as set forth herein.

43. Conversely, even though a grant of this Motion creates the potential for a secured claim in favor of the Town against Suri for additional tax amounts due for the 2020 tax year (estimated by the Town to be approximately $154,474.48 for amounts due up to the sale closing), the Town has expressed a willingness to be flexible on the interest and charges due on such amounts.

44. Finally, the Town submits that grant of this Motion also cannot be construed to cause prejudice to the Purchaser based on any purported reliance of the relief granted in the Tax Order, because the Tax Order was entered after the closing on the sale of the Subject Property had already occurred.

For these reasons, the Motion for Relief should be granted to allow the Court to permit the Court to evaluate the merits of the Motion based upon the objections raised by the Town herein, and to reverse entry of the Tax Order.

11596756v1

WHEREFORE, the Town of South Windsor respectfully requests that the Court (i) grant relief from the Tax Order pursuant to Rule 60 of the Federal Rules of Civil Procedure to consider the Tax Motion on its merits and reverse entry of the Tax Order, and (iii) grant such other and further relief to the Town as may be just and proper.

Dated: July 22, 2021

> Respectfully submitted,
>
> TOWN OF SOUTH WINDSOR
>
> By its attorneys:
>
>  */s/ Taruna Garg*
> Taruna Garg
> Murtha Cullina LLP
> 107 Elm Street, Four Stamford Plaza
> Stamford, Connecticut 06902
> Telephone:  203.653.5400
> Facsimile:   203.653.5444
> tgarg@murthalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2021, a copy of the foregoing motion, and all declarations and exhibits thereto, were filed electronically and notice of electronic filing was sent by email to all parties in interest filing appearances in this matter by operation of the Court's electronic filing system as indicated on the Notice of Filing.

> _____/s/ Taruna Garg_____
> Taruna Garg

11596756v1