**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| IN RE: ) | CASE No.            21-20111 (JJT) |
| ) | |
| OLD CP, INC., *et al.*, ) | Jointly Administered |
|     Reorganized Debtors. ) | |
| ) | CHAPTER             11 |
| Town of South Windsor, ) | |
|     Movant ) | RE: ECF Nos.      646, 1002, 1466, 1494 |
| V. ) | |
| ) | |
| Suri Realty, LLC ) | |
|     Respondent. ) | |
| ) | |

**MEMORANDUM OF DECISION
AND ORDER GRANTING MOTION FOR
AUTHORITY TO ENTER INTO SETTLEMENT
AGREEMENT AND TO VACATE ORDER GRANTING
MOTION FOR DETERMINATION OF TAX LIABILITY AT ECF NO. 646**

    I.    INTRODUCTION

Craig Jalbert (the "Liquidating Custodian") in his capacity as Liquidating Custodian of Old CP, Inc. ("Old CP") and Suri Realty, Inc. ("Suri," which together with Old CP are collectively referred to as the "Debtors"), filed the instant Motion to Approve Settlement Agreement and Vacate Tax Order. ECF No. 1466 (the "Motion"). Through the Motion, the Liquidating Custodian seeks the authority, pursuant to Fed. R. Bankr. P. 9019, to enter into a settlement agreement (the "Agreement" or "Settlement") with the Town of South Windsor (the "Town") that would resolve a dispute concerning real estate taxes due to the Town. The Motion also seeks to vacate this Court's prior Order Granting Motion for Determination of Tax Liability (ECF No. 646, the "Tax Order"), which is at the heart of the dispute between the parties.

The dispute between the Liquidating Custodian and the Town concerns real estate taxes allegedly due to the Town in the approximate amount of $340,000, which funds have been held in escrow since the Debtors sold substantially all of their assets in this Chapter 11 case. The Liquidating Custodian contends that the Town incorrectly interpreted the meaning of a tax abatement agreement (the "Abatement Agreement") between the parties and overcharged the Debtors for taxes, pre-petition, and as such, the Liquidating Custodian's position is that the Debtors do not owe the $340,000. The Town disagrees.

Under the Settlement, the $340,000, and any accumulated interest thereon, will be split evenly between these parties. The Liquidating Custodian contends that a settlement of this dispute will not impact unsecured creditors in any manner as all proceeds in an escrow for the Settlement are on account of real estate previously owned by Suri. All of the settlement proceeds will ultimately go to Debtors' secured creditors, Peoples United Bank, N.A. ("PUB") and BMO Harris Bank ("BMO," who together with PUB are jointly referred to as the "Banks"), who funded that escrow with their cash collateral. The Liquidating Custodian, through counsel, has consulted with the Banks' counsel who agree that this Settlement is appropriate.

The Liquidating Custodian also seeks an order vacating the Court's Tax Order, which, he also argues, will have no impact on the Debtors or their estates. The Liquidating Custodian further contends that the Settlement should have no impact on the pending motion by CP Foods, LLC and NFP Real Estate, LLC (the "Buyers") concerning their rights under the Abatement Agreement related to post-sale treatment of real property taxes. *See* Motion to Enforce re: Order on Motion to Sell 363(b), ECF No. 1444 (the "Buyers' Motion"). Specifically, the Liquidating Custodian argues that the Buyers could not have relied on the Tax Order because it was entered

2

subsequent to the sale of Debtors' assets, and the Buyers' Motion relies on the Sale Order and Cure Notice concerning the treatment of its rights under the Abatement Agreement.

The Buyers objected to the Motion (ECF No. 1494, the "Objection"), arguing that they will be directly harmed if the Tax Order is vacated because they relied upon the Tax Order when negotiating the sale and purchase of the Debtors' assets. More specifically, the Buyers argue that the Motion for Determination of Tax Liability Under 11 U.S.C. §§ 105 and 505 (ECF No. 483, the "Tax Abatement Motion"), the Escrow Agreement, and, ultimately, the Tax Order were necessary and required to enable the Buyers to secure the full benefits of title insurance policies, and that the Settlement and any order vacating the Tax Order could require the Buyers to tender a payment of $44,982.24 for pre-closing real estate taxes pursuant to a provision in the Escrow Agreement.[1]

The Buyers finally argue that vacating the Tax Order would strip them of their rights to litigate certain issues implicated by the Town's Motion for Relief from the Tax Abatement Order (ECF No. 1002, the "Motion for Relief"). The Buyers contend that their Reservation of Rights filed in connection with the Town's Motion for Relief and the Liquidating Custodian's opposition thereto (ECF No. 1190), expressly permitted the Buyers to participate in the litigation of the Motion for Relief *after* issues of notice to the Town of the Tax Abatement Motion were adjudicated.[2] The Buyers' position is that this right would be lost if the instant Motion is granted.

---

[1] The Escrow Agreement required the Buyers to tender to the Debtors as a closing proration "$44,982.24 . . . within thirty (30) days after the entry of the Tax Abatement Order" if the Court determined that the amount of real estate property taxes due and owing on the Real Property from July 1, 2020 through June 30, 2021 was $340,000. The Tax Order fixed the tax liability at $257,320.10, and as such, the Buyers were not required to tender the Debtors the $44,982.24. In response to this specific objection, the Liquidating Custodian indicated that he had "no objection to adding a clarifying statement to any order approving the 9019 Motion to confirm that [he is] not seeking payment of the $44,982.24." ECF No. 1497 at ¶2. The Town has likewise affirmed that such sum is not due from the Buyers or the Debtors. *See* ECF No. 1498 at ¶1.

[2] Pursuant to a Scheduling Order on the Motion for Relief (ECF No. 1070), the Court bifurcated the issues raised therein, considering first the issue of whether the Town received due and proper notice of the Tax Abatement

This argument plainly fails to recognize that the Buyers have been fully heard on this Motion and will have all of their arguments as to the construction, force and effect of the Abatement Agreement preserved for further proceedings by this ruling.

Additionally, the Buyers claim that, should the Court vacate the Tax Order, the Town will attempt to relitigate the provision of that Order that found "for the 2020 tax year and after, the Town of South Windsor is required to reduce the gross assessment by 70% prior to calculating the real property tax due on account of the Real Property as is required under the Abatement Agreement." The Buyers contend that any order approving the Motion and vacating the Tax Order will embolden the Town to pursue litigation to justify its failure to participate in these Chapter 11 cases and attempt to rewrite the Abatement Agreement.

Lastly, the Buyers argue that the Motion improperly applies the Rule 9019 settlement standards in an attempt to vacate the Tax Order by seeking vacatur under the "lowest point in the range of reasonableness standard," and that the Liquidating Custodian is otherwise judicially estopped from agreeing to vacatur of the Tax Order based upon the position he and his predecessor in interest took in connection with the prosecution of the Tax Abatement Motion.

The Court held a hearing on the Motion and the Buyers' Objection on May 26, 2022, where the Liquidating Custodian, the Town, and the Banks all argued in support of approving the Motion, and the Buyers further advanced their opposition thereto. ECF No. 1502. At the conclusion of that hearing, the Court took the matter under advisement. Upon its full examination of this matter, the Court rejects the Buyers' arguments. For the reasons set forth herein, the Motion is hereby GRANTED, and the Buyers' Objection is hereby OVERRULED.

---

Motion, and only then if the Court found that the Town did not receive notice, would it consider the substantive arguments raised by the Town. The Court has entered no order with reference to the Buyers' Reservation of Rights.

4

Accordingly, the Agreement between the Liquidating Custodian and the Town is approved, and the Court will vacate the Tax Order at ECF No. 646.

II. BACKGROUND

1. On October 29, 2020, an involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against Suri. *See* Case No. 20-21270 at ECF No. 1.

2. An order converting the involuntary chapter 7 bankruptcy case to a voluntary case under Chapter 11 of the Bankruptcy Code was entered on December 17, 2020. See Case No. 20-21270, ECF No. 30 (the "Suri Chapter 11 Case").

3. On February 8, 2021 (the "Petition Date"), Carla's Pasta, Inc., n/k/a Old CP, Inc., filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Connecticut, Hartford Division (the "CPI Bankruptcy Case").

4. The Suri Chapter 11 Case was then administratively consolidated with the CPI Bankruptcy Case on February 12, 2021.

5. On April 30, 2021, following Court approval, the Debtors closed on the sale of substantially all of their assets to the Buyers pursuant to an Asset Purchase Agreement (the "APA"). A copy of the Sale Order and final APA is set forth at ECF No. 486.

6. As part of the closing on the sale described in the APA (the "Closing") and corresponding Sale Order, $340,000.00 was placed in escrow (the "Tax Escrow") with First American Title Insurance Company ("FATIC") concerning pre-petition real estate taxes allegedly owed to the Town, as further described herein.[3]

---

[3] Notwithstanding the potential dispute on these pre-petition real property taxes, the Debtors did not specifically reference the Town or its disputed taxes in the caption or text of their Motion to Sell at ECF No. 28. *See* L. Bankr. R. 6004-1(b).

7. Prior to the Petition Date, the Debtors entered into several agreements with the Town for abatement of real property taxes for real property acquired and improvements made by the Debtors.

8. In or about July 2016, Suri submitted a Request for Tax Abatement to the Town as an incentive to invest an estimated $23,448,300 in total costs for land and building improvements and to construct a 156,322 square foot expansion in the Town (the "Improvements and Expansion").

9. On September 6, 2016, the Town Council voted to adopt a resolution (the "2016 Resolution") authorizing a 70% reduction of the assessed value of the Improvements and Expansion for a period of seven (7) years. The tax benefits granted through the 2016 Resolution were due to commence with the Grand List following the date of the issuance of a certificate of occupancy following the completion of the Improvements and the Expansion.

10. On August 14, 2019, the Town issued a Certificate of Occupancy to Suri.

11. On or about October 2, 2019, the Town and Suri entered into the Abatement Agreement, incorporating the terms set forth in the 2016 Resolution.

12. The Abatement Agreement included additional conditions to ensure Suri's compliance with the benchmarks set forth in the 2016 Resolution. For example, the Abatement Agreement required Suri to furnish an affidavit within one year of commencement of operations affirming the (i) actual value of the site expansion to ensure that the expansion substantially met the requirements set forth in the Abatement Agreement, (ii) the cost of construction to meet the minimum required investment of $23,448, 300, and (iii) the number of employees employed at its facility.

13. On January 31, 2020, approximately four months after the execution of the Abatement Agreement by the parties, the Town issued a Real Property Assessment Notice of the real property tax assessments for the 2019 Assessment Year (the "2019 Assessment Notice"). The 2019 Assessment Notice formed the basis for the 2020 real estate tax bill.

14. The 2019 Assessment Notice notified Suri of its statutory right pursuant to Conn. Gen. Stat. § 12-111 to file an appeal on or before February 20, 2020, to dispute the Town's tax assessment. No such timely appeal was filed by Suri, and no record thereof was made in the hearing on the Tax Abatement Motion by the Debtors.

15. On April 26, 2021, the Debtors filed their Tax Abatement Motion, which sought limited, discrete relief related to the mathematical calculation of the Town's 2020 Real Property tax bill and to apply such calculation to the amounts due the Town in future tax years.

16. The Town did not file an appearance in the Debtors' bankruptcy cases and did not appear or file a response to the Tax Abatement Motion. The Debtors' record of the hearing on the Tax Abatement Motion was minimal, but unopposed.

17. This Court granted the Tax Abatement Motion on May 26, 2021, upon default of the Town. Tax Order, ECF No. 646. The Tax Order found that the "tax liability to the Town of South Windsor in connection with its Real Property located at 50 Talbot Lane is determined to be $257,320.10 for the 2020 tax year. . . . [and for] the 2020 tax year and after, the Town of South Windsor is required to reduce the gross assessment by 70% prior to calculating the real property tax due on account of the Real Property as is required under the Abatement Agreement."

18. Thereafter, the Town filed its Motion for Relief which sought to vacate the Tax Order based upon several grounds. The Town asserted that (i) it received no notice of the Tax

7

Abatement Motion and Tax Order due to deficiencies in service by the Debtors, and (ii) the Tax Order was entered based upon a mistake of facts presented by the Debtors to the Court, namely that the Debtors had not informed the Court in the Tax Abatement Motion that they had failed to raise a timely challenge to the 2019 Assessment Notice, as required by Connecticut law.

19. The Court subsequently bifurcated the adjudication of that Motion, first considering whether the Town received due and proper notice of the Tax Abatement Motion, and then considering the substantive arguments raised by the Town only if the Court found that the Town did not, in fact, receive proper notice.

20. On October 18, 2021, the Buyers filed their Reservation of Rights regarding the Town's Motion for Relief (ECF No. 1190), which expressly reserved all of the Buyers' rights to oppose the substantive arguments raised in the Motion for Relief, except issues related to the notice of the Tax Abatement Motion. The Court neither approved nor denied the Buyers' asserted Reservation of Rights.

21. On April 18, 2022, the Liquidating Custodian filed the instant Motion, to which the Buyers have objected and were heard by the Court.

III. DISCUSSION

Fed. R. Bankr. P. 9019(a) provides that "on motion by the trustee and after notice and a hearing, the bankruptcy court may approve a compromise or settlement." The Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical matter, it will often be wise to arrange the settlement of claims in which there are substantial and reasonable doubts." *In re Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). Approval of a proposed settlement lies with the

sound discretion of the bankruptcy court. *In re Hurt*, 2017 WL 123409 at *2 (Bankr. D. Conn. 2017).

The Second Circuit in *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007), set forth the factors this Court must consider when approving a settlement under Bankruptcy Rule 9019. *Iridium* instructs the Court to consider the following seven factors when evaluating whether a settlement is fair and reasonable:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

*Id.* (citations omitted).

In each instance here (aside from factor #6 above which the Court finds to be inapplicable to this matter), on the basis of this record, and for the reasons stated herein, the Liquidating Custodian has resoundingly satisfied the Court that each of these standards has been met and that his business judgment embodied in this Settlement is well within the range of reasonableness and consistent with the fair and expeditious administration of this Chapter 11 estate and the best interests of the creditors thereof.

In particular, in weighing the *Iridium* factors in favor of the Settlement, the Court relied heavily on the following additional factors to further anchor its conclusions:

1. That the Tax Order was procured upon default against a governmental entity that had a statutory right to reliance on the legal and finality effect of Suri's failure to appeal its property tax assessment. *See* Conn. Gen. Stat. § 12-111; 11 U.S.C. § 505(c). Such finality would have likely restrained this Court in its authority to issue parts of that Order.

2. That evidence of the absence of a timely statutory appeal of the 2019 Assessment by Suri was not otherwise disclosed upon the record at the hearing on the Tax Abatement Motion.

3. That there are bona fide arguments raised by the Town as to the adequacy of the notice related to the Tax Abatement Motion and Tax Order, or whether the facts and circumstances related thereto would otherwise entitle the Town to equitable relief from the Tax Order.

4. That courts in this Circuit favor an adjudication on the merits with regard to bona fide disputes, as opposed to determinations upon default judgment. *See Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001) (citing *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 92, 95 (2d Cir. 1993)).

5. That the Buyers closed their purchase of the Suri Property prior to entry of the Tax Order, without prior reliance upon its entry, but having instead bargained for a judicial process to address the tax issues. While the Buyers may benefit from the default Tax Order after closing their acquisition upon the Suri Property, their alleged reliance interests are without substance. With the vacation of the Tax Order, the Buyers have received and will get the adjudicatory process they bargained for and legitimately relied upon in connection with the closing.

6. That there is no effect upon unsecured creditors as a consequence of the Settlement, as the escrow funds will be recovered by the Town and the Banks (whose collateral proceeds funded the escrow). Pursuant to a Final Cash Collateral Order (ECF No. 189), the Banks were granted a valid and perfected first priority lien in, among other thing, all then-present and after-acquired cash collateral.

7. That to the extent Fed. R. Bankr. P. 9024 applies, it has either been satisfied here, or upon the Court's survey of the totality of the facts and circumstances in the record, can be said to have been weighed in the Court's 9019 analysis. Any plenary dispute over this issue would provide a bona fide basis for the Court to conclude that the Town would likely be accorded such relief in a hearing based upon its ability to prove that:

   a. Mistake, inadvertence, or excusable neglect (relating to its processing the hearing notice and Tax Order) may apply; or

   b. Applying the Tax Order prospectively is no longer equitable; or

   c. Other reasons justify relief, including favoring an adjudication upon the merits, addressing the possible limits upon the Court's jurisdiction herein, assessing the ostensible bona fide defense that there are defaults under the Abatement Agreement which are material and in the public interest, but that are otherwise absent in the record and likely persist to this day.

8. In the final analysis, the capable and experienced bankruptcy professionals of this Chapter 11 estate have soberly balanced the costs, complexities, likely success and consequences of this resolution upon the Chapter 11 estate, along with the paramount interests of creditor constituents and the potential prejudice to others, so as to forge a cost-effective, fundamentally fair Settlement well within the range of reasonableness.

As to the additional arguments advanced by the Buyers, such objections, while weighed by this Court, do not interpose sufficient countervailing considerations to constrain or restrain this Court's exercise of its authority, discretion, and scrutiny under Fed. R. Bankr. P. 9019 and 9024 herein.

IV.     CONCLUSION

Accordingly, the Liquidating Custodian's Motion to Approve Settlement Agreement and Vacate Tax Order is hereby GRANTED, and the Buyers' Objections thereto are hereby expressly OVERRULED.

Further, for cause shown, the Clerk of Court is directed to VACATE the Tax Order at ECF No. 646 by an appropriate and separate docket entry.

The Court will hold a Status Conference on June 28, 2022 at 11:00 AM to address the prosecution of any further proceedings relating to its rehearing the Tax Abatement or related Motions.

**IT IS SO ORDERED** at Hartford, Connecticut this 8th day of June 2022.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut